**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| RUOXUE WU,<br>　　　Plaintiff,<br><br>v.<br><br>LEI MA, and<br>WORCESTER POLYTECHNIC INSTITUTE,<br>　　　Defendants. | Civil Action No.: 3:22-CV-30033-KAR<br><br>LEAVE TO FILE GRANTED<br>8/9/22 |

**WORCESTER POLYTECHNIC INSTITUTE'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Worcester Polytechnic Institute ("WPI") respectfully submits this memorandum in support of its motion to dismiss plaintiff Ruoxue Wu's ("Ms. Wu") Verified Complaint ("Complaint" or "Compl.") in its entirety.

**<u>Introduction</u>**

Plaintiff's 353-paragraph Complaint recounts her long history of abuse and depression, including several suicide attempts in China long before she enrolled at WPI. Compl. ¶31 ("Most suicide attempts were intentional drug overdoses, but one attempt included preparing to jump off a twenty-two (22) story building."). She alleges that she enrolled as a Ph.D. student at WPI in 2021, at the age of 33, to "escape a stressful family environment … in the hopes that a change in environment would help her feel better." Compl. ¶¶50-51. Her first day of classes at WPI was August 25, 2021. Fifty-four days later she "attempted to commit suicide by ingesting 360 pills." Compl. ¶130. She was discovered unconscious by her landlord and then hospitalized at UMass Memorial Medical Center ("UMass Memorial") and McLean Hospital. Compl. ¶¶126-131, 145-150. Following her release from McLean Hospital, she reported to WPI employees that she had a "feeling of hopelessness" and that "she envied the four dead classmates" – referring to four WPI

1

students who had died by suicide earlier in the year.  Compl.  ¶179.  On November 11, 2021, she was readmitted to UMass Memorial pursuant to M.G.L. c. 123, §12 (Emergency restraint and hospitalization of persons posing risk of serious harm by reason of mental illness).  Compl. ¶214. UMass Memorial transferred her back to McClean Hospital on November 16, 2021.  Compl. ¶220.

Shortly thereafter, WPI placed Ms. Wu on an "administrative withdrawal" status based on its "concerns for [Ms. Wu's] personal safety and well-being" and its determination that "ensuring [Ms. Wu's] personal safety and well-being, as well as the safety and wellbeing of the WPI community, is well beyond our capabilities, resources and expertise."  Compl. ¶222.  The decision to place her on administrative withdrawal status followed Ms. Wu's refusal to accept alternatives offered by WPI, including an offer that she take a medically-approved reduced course load or a medical leave of absence.  Compl. ¶174.

In her Complaint, Ms. Wu alleges that WPI's actions constituted: discrimination because of her disability (*i.e.*, depression) (Counts I-IV); negligence and gross negligence (Counts V and VI); intentional infliction of emotional distress (Count IX); and breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and interference with contractual relations (Counts X-XIV).  All of the claims against WPI fail as a matter of law. The Complaint itself makes clear that WPI acted based on Ms. Wu's *conduct* and not based on her disability.  Indeed, when WPI made the decision to administratively withdraw Ms. Wu, WPI had actual knowledge of her October 2021 suicide attempt, had significant and growing concerns given her multiple statements suggesting suicidal ideation, and had a legal duty under Massachusetts law to take reasonable measures to protect her from self-harm.  These were the facts known to WPI. Given Ms. Wu's conduct and the potential dire consequences of a wrong decision, placing her on administrative withdrawal was fully justified as a matter of law.

As explained below, the Complaint fails to state a claim for relief and should be dismissed with prejudice:

- Counts I-IV should be dismissed because WPI took action, pursuant to its duty under Massachusetts law to take reasonable measures to protect Ms. Wu from self-harm, based on Ms. Wu's conduct, not her disability.

- Counts V and VI should be dismissed because Ms. Wu does not identify a duty that obligated WPI to intervene in an interpersonal dispute between Ms. Wu and Ms. Ma (*i.e.*, a dispute between two adults).

- Count IX should be dismissed because Ms. Wu fails to allege extreme or outrageous conduct by WPI or that WPI acted with an improper intent. Simply put, it is neither outrageous nor extreme to require a student who has recently attempted to commit suicide and who is making increasingly concerning statements suggesting suicidal ideation, to go to the hospital to be evaluated by medical professionals; moreover, it is neither extreme nor outrageous to require such a student to take an administrative withdrawal so that she can focus on her mental health. Lastly, WPI acted pursuant to its duty under Massachusetts law to take reasonable measures to protect Ms. Wu from self-harm.

- Counts X-XII should be dismissed because the language from the Student Code of Conduct Ms. Wu cites is aspirational and not definite enough to create a binding contract or promise.

- Count XIII should be dismissed because the language from the Student Code of Conduct Ms. Wu cites did not create a contract or promise and Ms. Wu's allegations demonstrate that there was no unjustness.

- Count XIV should be dismissed because WPI did not knowingly induce a breach of contract (*i.e.*, Ms. Wu's F-1 visa). WPI acted pursuant to its obligations under Massachusetts and federal law when it placed Ms. Wu on administrative withdrawal and updated the federal government regarding Ms. Wu's status.

### Facts Alleged in the Complaint[1]

Ms. Wu has struggled with depression since 2000; at some point, she was diagnosed with Major Depressive Disorder. Compl. ¶¶6, 29. Ms. Wu attempted suicide three times. Compl. ¶30. Over the years, Ms. Wu has attempted to manage her depression through seeing a psychologist, medication, exercise, and eating well. Compl. ¶47. Ms. Wu applied to and was accepted into the

---

[1] For purposes of this motion only, WPI assumes as true Ms. Wu's factual allegations. WPI reserves the right to contest these alleged facts if proceedings continue.

Computer Science Ph.D. program at WPI; she was awarded a teaching assistantship for the Fall

2021 and Spring 2022 semesters and her first day of classes at WPI was August 25, 2021.  Compl.

¶¶52-53, 60.

> WPI's Student Code of Conduct contains, *inter alia*, the following language:
>
> "WPI is *committed to* offering students a nurturing, supporting, collaborative, and positive learning environment encouraging the active exchange of ideas, deep reflection, and sound decision making."
>
> "Each WPI *student* is responsible for reading and understanding *WPI's expectations*, which are documented in this Code.  By enrolling at WPI, students voluntarily agree to comply with the standards of performance and behavior described in this Code and in WPI's policies."
>
> "WPI *expects* that members of its community will not engage in behavior that compromises or negatively affects their or others' physical and mental health, safety, academic progress, or professional responsibilities.  For example, WPI prohibits behavior or interactions that can generally be perceived as uncivil, unprofessional or retaliatory towards others."

Compl. ¶¶ 75, 76, 80 (emphases added).

On September 22, 2021, Ms. Wu began meeting with Matthew Barry ("Mr. Barry), a

Licensed Mental Health Counselor at WPI's Student Development and Counseling Center (the

"SDCC"), to discuss, *inter alia*, her depression, her history of depression, the pressures associated

with being a first-year graduate student at WPI, her sleeping issues, and her feelings of isolation.

Compl. ¶¶81-82, 101, 102, 107.  On October 13, 2021, Ms. Wu met with Mr. Barry and expressed

that, *on a daily basis*, she felt miserable and had no self-esteem as a result of interactions with a

fellow student.  Compl. ¶106.

On October 17, 2021, Ms. Wu learned that her post-doctoral advisor Lei Cao ("Cao")[2] was

aware of Ms. Wu's depression; Ms. Wu believed that she would lose her position in a project group

because Cao was aware of Ms. Wu's depression.  Compl. ¶122.  On October 18, 2021, Ms. Wu

---

[2] Cao is a postdoctoral associate at the Computer Science and Artificial Intelligence Lab of MIT.

attempted to commit suicide by taking approximately 360 pills (60 pills of Xanax, 120 pills of Fluvoxamine, and 180 pills of Cymbalta). Compl. ¶¶130-131. Ms. Wu was found in her apartment by her landlord surrounded by pills; Ms. Wu was transported by ambulance to UMass Memorial, where she was admitted. Compl. ¶¶126-129.

On October 20, 2021, Mirabelle Tseng ("Ms. Tseng"), Assistant Director of International Student Life at WPI's Office of International Student Life, contacted Ms. Wu, who was still in the hospital. Compl. ¶¶137. Ms. Tseng told Ms. Wu that she needed to schedule a re-entry meeting upon discharge from the hospital prior to resuming her studies at WPI. Compl. ¶141. On October 23, 2021, UMass Memorial transferred Ms. Wu to McLean Hospital. Compl. ¶145. McLean Hospital identified the following risk factors for Ms. Wu: "social isolation, language barrier, trauma history, history of multiple serious suicide attempts, a possible eating disorder, obsessive compulsive disorder, and/or borderline personality disorder." Compl. ¶147. On October 28, 2021, McLean Hospital determined that Ms. Wu no longer "required a secure, structured, inpatient, psychiatric setting in order to prevent harm and to assure safety[,]" Ms. Wu was "not having any active suicidal ideation[,]" and released Ms. Wu from the hospital. Compl. ¶¶146, 148, 150.

On October 28, 2021, Mr. Barry held a re-entry interview with Ms. Wu; on October 29, 2021, Ms. Tseng had a Zoom call with Ms. Wu to discuss her well-being and to recommend that Ms. Wu contact her academic advisor as soon as possible about her directed research for the semester. Compl. ¶¶151-152, 155. Ms. Tseng also proposed having a weekly meeting with Ms. Wu. Compl. ¶¶159-160.

On November 5, 2021, Ms. Tseng and Ms. Wu communicated by Zoom and also communicated several times by text message. Compl. ¶¶161-162. During the Zoom call, Ms. Tseng asked if Ms. Wu was thinking of suicide and how Ms. Wu felt about a fellow student who had recently committed suicide; Ms. Wu responded, "'When you're gone, no one will be mad at

you,' which was a reference to the custom of Plaintiff's hometown, that the dead are the greatest, meaning that no matter what they did before, people would never say anything bad about them after their death."  Compl. ¶¶163, 165-166.

On November 8, 2021, Ms. Wu had a re-entry meeting with Ms. Tseng and Emily Perlow ("Ms. Perlow"), Associate Dean of Students.  Compl. ¶170.  During this meeting, Ms. Perlow "requested" that Ms. Wu take a break from school.  Compl. ¶171.  On November 11, 2021, Ms. Perlow sent Ms. Wu an email that stated, in relevant part:

> Thank you for meeting with me on Monday.  I'm writing to summarize our conversation and to talk about next steps.
>
> …
>
> In your prior conversations with [Ms. Tseng], you indicated that you planned to withdraw from directed research this term and focus on your other two courses for this term.  I checked in Workday today and it does not appear that you withdrew from directed research.
>
> …
>
> How may I help you?
>
> At our meeting, we discussed the importance of taking care of your health so that you are best positioned to succeed academically.  We discussed that there are various options for pursuing your degree here at WPI, including:
>
> [T]he possibility of a medically approved reduced course load that allows you to focus on your health, take fewer courses, and can allow you to continue your TAship, which allows you to maintain your funding.  As [Ms. Tseng] explained, this is possible to do and maintain your visa.
>
> You also have the option of taking a leave of absence if you wish.  In our conversation, you shared you[r] hope to return to fulltime course work in January, but wanted to evaluate that at a later date.
>
> I continue to be concerned about your overall personal safety and wellness.  As we discussed when we met, your health matters far more than any course you may take.  You agreed to maintain a regular relationship with a counselor and adhere to the expectations your counselor or psychiatrist may set forth for you.  We also discussed how important it is for you to seek help from a professional counselor immediately if you are having thoughts about ending your life or harming yourself.  Your counselor is the appropriate person and best equipped professional trained person for you to share these feelings.

WPI remains committed to your success.  We want to see you complete your coursework and graduate from WPI.  Yet, this commitment must be balanced with our responsibility to ensure that your well-being and the well-being of the rest of the community is not impacted.

I look forward to speaking with you further when you are ready.

Compl. ¶174; also attached as Ex. C to the Complaint.

At around 9:30 a.m. on November 11, 2021, Ms. Wu texted Ms. Tseng, expressing a "feeling of hopelessness" due to actions of a classmate and stating that "she envied the four dead classmates, again referring to the custom of Plaintiff's hometown that the dead are the greatest, meaning that no matter what they did before, people would never say anything bad about them after their death[.]"  Compl. ¶¶177-179.  When Ms. Wu returned to her home later that morning, an officer from the WPI Police Department was present; he informed Ms. Wu that Ms. Tseng had told the WPI Police Department that she (Ms. Tseng) believed Ms. Wu was going to kill herself.  Compl. ¶186-187.  The officer requested that Ms. Wu accompany him to WPI's SDCC to have a meeting with a counselor.  Compl. ¶190.  Ms. Wu accompanied the officer to the SDCC where Ms. Wu, and her lawyer, met with Charles Morse ("Mr. Morse"), Associate Dean and Director of Counseling at the SDCC.  Compl. ¶¶191-192.  Mr. Morse gave Ms. Wu the options of taking a semester break from campus or withdrawing from the program; Ms. Wu refused both options.  Compl. ¶¶197-198.  Mr. Morse then asked Ms. Wu to cooperate with WPI's process by going to the UMass Memorial for an evaluation; the WPI police office escorted Ms. Wu to UMass Memorial.  Compl. ¶¶200-203.

UMass Memorial initially admitted Ms. Wu in the Emergency Room.  Subsequently, UMass Memorial staff, having heard from WPI counselor Phyllis Fitzsimmons that Ms. Wu "had a serious suicide attempt and WPI was convinced that Plaintiff needed a much higher level of care," determined that it was necessary to admit Ms. Wu pursuant to M.G.L. c. 123, §12 (Emergency

restraint and hospitalization of persons posing risk of serious harm by reason of mental illness); this means that the staff at UMass Memorial determined that failure to hospitalize Ms. Wu would create a likelihood of serious harm by reason of mental illness.  Compl. ¶¶204, 210, 214; M.G.L. c. 123, §12.   Ms. Wu remained at UMass Memorial for six days; on November 16, 2021, Ms. Wu was transported to McLean Hospital and admitted under a conditional voluntary status.  Compl. ¶¶215, 220.  Upon admission to McLean Hospital, Ms. Wu submitted a three-day notice of intent to leave (*i.e.*, indicating that Ms. Wu intended to leave McLean Hospital after 72 hours).  Compl. ¶221.

On November 16, 2021, Ms. Perlow sent Ms. Wu a letter, cc'ing Mr. Morse, that stated, in relevant part:

> This letter serves as confirmation of WPI's decision to place you on an Administrative Withdrawal from Worcester Polytechnic Institute (WPI) effective immediately.  Pending completion of the requirements outlined in this letter, you will be eligible to return to WPI as soon as fall semester 2022.
>
> *This Administrative Withdrawal results from WPI's concerns for your personal safety and well-being.  More specifically, you made an attempt on your life on October 18, 2021, and upon return to campus after your hospitalization, you have continued to make verbal statements and sent several text messages that intensified over the last week indicating persistent suicidal ideation.  These statements then contributed to a second hospitalization.*
>
> …
>
> Your fellow students and faculty and staff at WPI have expressed a desire to assist you during this time, yet your behavior and interactions with them have caused a great deal of concern and anxiety, as they have been unsure of your personal safety.  Further, you have not taken steps you stated you would take to withdraw from directed research following your October hospitalization.  When options for reduced course load or a possible leave of absence were reviewed with you, you did not wish to consider these options.
> Under these circumstances, we have concluded that ensuring your personal safety and well-being, as well as the safety and wellbeing of the WPI community, is well beyond our capabilities, resources and expertise.
>
> …
>
> To return to WPI, you must meet the following expectations: ….

Compl. ¶222 (emphasis added); also attached as Ex. D to the Complaint.

8

On November 17, 2021, Ms. Perlow, with Ms. Tseng's assistance, contacted Ms. Wu's father. Compl. ¶223.

Subsequently, the McLean Hospital staff "tried to get Plaintiff to sign a document revoking her three-day notice of intent to leave, which Plaintiff refused." Compl. ¶227.

By letter dated December 9, 2021, WPI informed Ms. Wu:

This letter serves as notification of WPI's termination of your F-1 SEVIS record.

On November 16, 2021, Worcester Polytechnic Institute's (WPI) Office of International Student Life was notified of your Administrative Withdrawal from WPI following Dean Perlow's notification to you.

By being placed on administrative withdrawal, you are no longer full-time enrolled at WPI, and this will affect your F-1 status. *We are required to update[] your F-1 SEVIS record when you are on administrative withdrawal*. However, due to your hospitalization, WPI's Office of International Student Life delayed the termination of your F-1 status after your administrative withdrawal letter to help coordinate your safe return to your home country upon your release from the hospital.

On December 8, 2021, the WPI's Office of International Student Life received information which indicates that you are no longer hospitalized, and you have continued your stay in the United States despite your administrative withdrawal from WPI.

As of the date of this letter, WPI has terminated your F-1 SEVIS record due to authorized early withdrawal because you cannot maintain enrollment at WPI for the remainder of the semester due to your administrative withdrawal. You are required to depart the United States within 15 days of December 9, 2021. Students who are administratively withdrawn are not granted a 60-day grace period by USCIS.

Your current I-20 will no longer be valid and may not be used for future travel to the U.S. If you wish to return to WPI, you will need to apply for a new I-20 and you may need to pay a new SEVIS fee, in addition to the steps outlined in your November 16, 2021 administrative withdrawal letter.

Please contact WPI's Office of International Student Life with any questions about your immigration status.

Compl. ¶232 (emphasis added); also attached as Ex. E to the Complaint.

<u>**Argument**</u>

Under the Supreme Court's standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'" *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (citations omitted).

I.    **THE COURT SHOULD DISMISS COUNTS I (VIOLATION OF TITLE III OF THE ADA), II (VIOLATION OF SECTION 504 OF THE REHABILITATION ACT), III (DECLARATORY JUDGMENT), AND IV (VIOLATION OF MERA) FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**.

The Court should dismiss Counts I, II, III, and IV – all of which assert discrimination on the basis of disability – because Ms. Wu has not alleged, and cannot allege, that WPI discriminated against her because of her disability. Ms. Wu alleges that her disability is depression or Major Depressive Disorder, Compl. ¶¶6, 29, but Ms. Wu's allegations and WPI's communications to Ms. Wu and WPI's actions make clear that WPI acted not because of Ms. Wu's depression but rather because of Ms. Wu's conduct, which indicated a significant and increasing risk of self-harm. WPI clearly explained the reasons for its actions:

10

> This Administrative Withdrawal results from WPI's concerns for your personal safety and well-being.  More specifically, you made an attempt on your life on October 18, 2021, and upon return to campus after your hospitalization, you have continued to make verbal statements and sent several text messages that intensified over the last week indicating persistent suicidal ideation.  These statements then contributed to a second hospitalization.

Compl. ¶222 (emphasis added); also attached as Ex. D to the Complaint.  Simply put, WPI took action based on the conduct that Ms. Wu admits in her complaint she engaged in, not her disability.

    A.  <u>Count I (violation of Title III of the Americans with Disabilities Act) and Count II (violation of Section 504 of the Rehabilitation Act)</u>.

Ms. Wu alleges that WPI violated Title III of the Americans with Disabilities Act (the "ADA") by: (1) "denying Plaintiff, on the basis of disability, the opportunity to fully and equally enjoy, participate in, and benefit from WPI's goods, services, facilities, privileges, advantages, and accommodations[;]"[3] (2) "executing involuntary leave utilizing criteria and methods of administration[4] that have the effect of discriminating against Plaintiff, a student with mental health disabilities, by tending to screen her out of, make it more onerous for her to regain access to, or completely deny campus services, facilities, privileges, advantages, and accommodations, on the basis of disability[;]" (3) failing to make reasonable modifications to its leave of absence policies, practices, or procedures[;]"[5] and (4) failing to provide Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to her needs."[6]  Compl. ¶¶241-244.

---

[3] Ms. Wu does not allege that she requested any accommodations for her disability.

[4] Other than the conclusory allegation in paragraph 242, Ms. Wu makes no allegations regarding WPI's "criteria and methods of administration."  Moreover, Ms. Wu does not allege that she requested any accommodations regarding such criteria and methods of administration.

[5] Other than the conclusory allegation in paragraph 243, Ms. Wu makes no allegations regarding WPI's "leave of absence policies, practices, or procedures."  Moreover, Ms. Wu does not allege that she requested any accommodations regarding such policies, practices, or procedures.

[6] Ms. Wu does not allege that she requested any accommodations.

Ms. Wu alleges that WPI violated Section 504 of the Rehabilitation Act by: (1) "denying Plaintiff the benefits of its programs, services and activities on the basis of disability[;]" and (2) maintaining rules, including eligibility criteria and methods of administration,[7] that have the effect of discriminating against Plaintiff, a student with mental health disabilities, by tending to screen her out of maintaining student status and access to campus resources, on the basis of disability." Compl. ¶¶260-261.

"The ADA and Section 504 of the Rehabilitation Act are 'frequently read in sync,' [] and are generally governed by the same standards[.]" *Brown v. Suffolk Univ.*, No. 19-40062-DHH, 2021 WL 2785047, at *4 (D. Mass. March 31, 2021) (*quoting Guckenberger v. Boston Univ., 974 F. Supp. 106, 133 (D. Mass. 1997) and *citing D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 39-40 (1st Cir. 2012)). "Title III of the ADA provides, in relevant part, 'No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.'" *Brown*, No. 19-40062-DHH, 2021 WL 2785047, at *3 (D. Mass. March 31, 2021) (*quoting* 42 U.S.C. § 12182(a)). "For purposes of Title III, a postgraduate private school is defined as a place of public accommodation." *Id*. (*citing* 42 U.S.C. § 12181(7)(J)). To prevail on a Title III claim, Ms. Wu must show that (1) she is disabled, (2) she was otherwise qualified, and (3) she was dismissed by WPI because of her disability (*i.e.*, her depression). *el Kouni v. Trustees of Boston Univ.*, 169 F. Supp. 2d 1, 2-3 (D. Mass. 2001) (*citing Katz v. City Meal Co.*, 87 F. 3d 26, 30 (1st Cir. 1996)); *Brown*, 2021 WL 2785047, at *3 (*quoting Axelrod v. Phillips Academy*, 46 F. Supp. 2d 72, 83 (D. Mass. 1999)). "In order to allege a claim under section 504 of the

---

[7] Other than the conclusory allegation in paragraph 261, Ms. Wu makes no allegations regarding WPI's "eligibility criteria and methods of administration."

Rehabilitation Act, a plaintiff 'must show (1) that [ ]he is disabled; (2) that [ ]he sought services from a federally funded entity; (3) that [ ]he was otherwise qualified to receive those services; and (4) that [ ]he was denied those services solely by reason of h[is] ... disability." *Brown*, 2021 WL 2785047, at *4 (*citing Lesley v. Chie*, 250 F.3d 47, 52-53 (1st Cir. 2001)).

Ms. Wu's claims under the ADA and the Rehabilitation Act are fundamentally flawed because while her allegations make clear that depression is her disability, her allegations demonstrate that WPI made the decision to place her on administrative withdrawal because of her potentially suicidal conduct, not because of her depression.

WPI acted in response to the following conduct by Ms. Wu:

- On October 6, 2021, Ms. Wu informed Mr. Barry of her "feelings of isolation;"

- On October 13, 2021, Ms. Wu informed Mr. Barry that she felt "miserable and ha[d] no self-esteem every day;"

- On October 18, 2021, Ms. Wu ingested approximately 360 pills in an attempt to commit suicide; as a result, Ms. Wu was hospitalized for five days at UMass Memorial and then for six days at McLean Hospital;

- On November 5, 2021, when Ms. Tseng asked Ms. Wu if she was thinking of suicide, Ms. Wu responded, "When you're gone, no one will be mad at you;"

- Ms. Wu failed to follow through on her agreement to withdraw from her directed research for the semester;

- On November 11, 2021, in text messages to Ms. Tseng, Ms. Wu expressed a "feeling of hopelessness," and "indicated that she envied the four dead classmates;"

- On November 11, 2021, the staff at UMass Memorial decided to admit Ms. Wu pursuant to M.G.L. c. 123, §12 and she was hospitalized for six days;

- On November 16, 2021, Ms. Wu was admitted to McLean Hospital.

Compl. ¶¶102, 106, 126-131, 145-150, 163, 166, 178, 179, 204, 214, 220.  Based on Ms. Wu's conduct, WPI decided to place Ms. Wu on Administrative Withdrawal.  Compl. ¶222.  Ms. Perlow could not have been clearer in her November 16, 2021 letter that WPI was placing Ms. Wu on

administrative withdrawal because of Ms. Wu's "attempt on [her own] life on October 18, 2021[,]" Ms. Wu's "verbal statements and [] several text messages that intensified over the last week indicating persistent suicidal ideation[,]" and because WPI "concluded that ensuring [Ms. Wu's] personal safety and well-being, as well as the safety and wellbeing of the WPI community, is well beyond our capabilities, resources and expertise." Compl. ¶222. Ms. Wu's allegations make clear that the medical professionals who treated her in October and November 2021 shared WPI's significant concerns regarding Ms. Wu: in October, UMass Memorial admitted Ms. Wu for a five-day hospital stay after her suicide attempt; UMass Memorial then transferred Ms. Wu to McLean Hospital where Ms. Wu remained for an additional six days; in November, UMass Memorial again admitted Ms. Wu and held her for six days pursuant to M.G.L. c. 123, §12;[8] Ms. Wu was then transported to McLean Hospital for a second time and the staff at McLean Hospital "tried to get Plaintiff to sign a document revoking her three-day notice of intent to leave, which Plaintiff refused." Compl. ¶¶129, 145-150, 204, 214, 220, 227.

Moreover, given Ms. Wu's conduct, WPI was duty bound under Massachusetts law to take action. "Where a university has actual knowledge of a student's suicide attempt that occurred while enrolled at the university … the university has a duty to take reasonable measures under the circumstances to protect the student from self-harm." *Nguyen v. Massachusetts Institute of Tech.*, 479 Mass. 436, 453 (2018) (*citing Mullins v. Pine Manor College*, 389 Mass. 47, 52 (1983)). With actual knowledge of Ms. Wu's October 18, 2021 suicide attempt, WPI took the following measures to protect Ms. Wu from self-harm:

---

[8] In relevant part, M.G.L. c. 123, §12 states: "A physician … an advanced practice registered nurse … a qualified psychologist … or a licensed independent clinical social worker … who, after examining a person, has reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness may restrain or authorize the restraint of such person and apply for the hospitalization of such person for a 3-day period at a public facility or at a private facility[.]" M.G.L. c. 123, §12.

- On October 20, 2021, Ms. Tseng contacted Ms. Wu to discuss Ms. Wu's suicide attempt and to schedule a re-entry meeting;

- On October 28, 2021, Mr. Barry conducted a re-entry interview with Ms. Wu;

- On October 29, 2021, Ms. Tseng had a Zoom call with Ms. Wu to ask about her physical condition, to suggest that Ms. Wu contact her academic advisor about her directed research for the semester, and to schedule a weekly meeting between Ms. Tseng and Ms. Wu;

- On November 5, 2021, Ms. Tseng communicated with Ms. Wu via text and Zoom call to inquire whether Ms. Wu was thinking about suicide and how Ms. Wu felt about a fellow student's recent suicide;

- On November 8, 2021, Ms. Perlow and Ms. Tseng met with Ms. Wu to discuss her options going forward; Ms. Perlow suggested that Ms. Wu take a break from school and requested that Ms. Wu meet with a counselor at the SDCC every week;

- On November 11, 2021, as detailed above, *see supra* pp. 6-7, Ms. Perlow emailed Ms. Wu to offer assistance;

- On November 11, 2021, Ms. Tseng communicated with Ms. Wu via text to see how she was doing;

- On November 11, 2021, Ms. Tseng, believing that Ms. Wu was "going to kill herself," relayed her texts with Ms. Wu to WPI's SDCC and called the WPI Police Department to conduct a wellness check on Ms. Wu;

- On November 11, 2021, an officer from the WPI Police Department accompanied Ms. Wu to WPI's SDCC to meet with Mr. Morse;

- On November 11, 2021, Mr. Morse asked Ms. Wu to cooperate with WPI's process and go to be evaluated at UMass Memorial;

- On November 11, 2021, the officer from the WPI Police Department accompanied Ms. Wu to UMass Memorial;

- On November 11, 2021, a counselor at WPI communicated to UMass Memorial that Ms. Wu had attempted suicide and that WPI was "convinced that [Ms. Wu] needed a much higher level of care;" and

- By letter dated November 16, 2021, WPI placed Ms. Wu on Administrative Withdrawal as "result[] [of] WPI's concerns for [Ms. Wu's] personal safety and well-being" and because WPI had "concluded that ensuring [Ms. Wu's] personal safety and well-being, as well as the safety and wellbeing of the WPI community, is well beyond our capabilities, resources and expertise."

Compl. ¶¶137, 140, 151, 152, 155, 160-163, 170, 171, 174, 177, 178, 180, 186, 187, 190, 192, 197, 198, 200-203, 210, 222.

Thus, Ms. Wu has not alleged, and cannot allege, that WPI took action against her on the basis of her disability (*i.e.*, her depression); rather, Ms. Wu's allegations make clear that WPI took action based on Ms. Wu's conduct.  Moreover, WPI, given its knowledge of Ms. Wu's suicide attempt, had a legal duty to take action(s) to protect Ms. Wu from self-harm.[9]

B.  Count III (declaratory relief).

Ms. Wu seeks a declaration that WPI is violating Title III of the ADA and Section 504 of the Rehabilitation Act, and related state laws, "by excluding students with mental health disabilities from its programs and services and causing students with mental health disabilities to be deterred from using Stanford [sic][10] services due to fear of being so excluded."  Compl. ¶268.  For the reasons explained above, *see supra* Sections I.A., the Court should dismiss Count III.

C.  Count IV (violation of Title XV of the Massachusetts Equal Rights Act, M.G.L. c. 93, §103).

Ms. Wu asserts that WPI violated Title XV of the Massachusetts Equal Rights Act, M.G.L. c. 93, §103, by "excluding Plaintiff, an otherwise qualified handicapped individual, solely by

---

[9] WPI placed Ms. Wu on administrative withdrawal as a last resort; WPI had offered Ms. Wu supports short of administrative withdrawal but Ms. Wu refused them.  *See* Principles for Students Who Pose a Risk of Self-Harm National Association of College & University Attorneys, January 26, 2018 ("Institutions should consider reasonable accommodations that would enable the student to remain enrolled and/or on campus … Involuntary separations from enrolled status may be utilized as a last resort.").

[10] Ms. Wu's reference to "Stanford" is borrowed from the Amended Complaint in *Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior Univ.*, No. 18-cv-02895 (N.D. Cal.), Document No. 25.  Paragraphs 267-270 of Ms. Wu's Complaint are duplicative of paragraphs 332-335 of the Stanford Amended Complaint.  With regard to Count I of Ms. Wu's Complaint, paragraphs 233-240 are duplicative of paragraphs 255-262 of the Stanford Amended Complaint, except for an additional paragraph regarding a surcharge in the Stanford Amended Complaint.  Count II of Ms. Wu's Complaint (paragraphs 249-266) is duplicative of paragraphs 270-284 of the Stanford Amended Complaint, with minor differences in specific facts/numbering.

reason of Plaintiff's handicap, from the participation in, denied the benefits of, or be subject to

discrimination under any program or activity within the Commonwealth by placing Plaintiff on

administrative withdrawal from WPI without conducting an individualized assessment with mental

health professionals, that there was a significant risk that the Plaintiff will harm herself and that the

risk cannot be eliminated th[r]ough accommodations."[11]  Compl. ¶278.

> Under M.G.L. c. 93, §103,

> Any person within the commonwealth, regardless of handicap or age as defined in chapter
> one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as
> other persons … including, but not limited to, the rights secured under Article CXIV of the
> Amendments to the Constitution.

M.G.L. c. 93, §103(a).  Article CXIV states, "No otherwise qualified handicapped individual shall,

solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be

subject to discrimination under any program or activity within the commonwealth."  Article CXIV

of the Articles of Amendment to the Massachusetts Constitution.

The Court should dismiss Count IV because, as explained in greater detail above, *see supra*

Sections I.A. and I.B., Ms. Wu's allegations make clear that WPI did not take action against her

based on her disability (*i.e.*, her depression), let alone "solely by reason of her handicap;" rather,

WPI took action regarding Ms. Wu's potentially suicidal conduct and in accordance with its duty

under Massachusetts law to take reasonable measures to protect Ms. Wu from self-harm.  *See, e.g.*,

*Pacella v. Tufts Univ. School of Dental Medicine*, 66 F. supp. 2d 234, 242 (D. Mass. 1999) (noting

that Massachusetts courts look to federal interpretations of the ADA and the Rehabilitation Act for

guidance as to claims under MERA).

---

[11] Ms. Wu does not allege that she requested any accommodations.

II.     **THE COURT SHOULD DISMISS COUNTS V (NEGLIGENCE) AND VI (GROSS NEGLIGENCE) FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**.

Ms. Wu asserts that WPI "was in a special relationship with Plaintiff due to the University-Student relationship," that "this special relationship gave rise to a duty for WPI to investigate, control, stop, or otherwise protect Plaintiff from conduct motivated in whole or in part by bias against [] Plaintiff's perceived or actual disability, and prevent members of WPI's community from engaging in behavior that compromises or negatively affected Plaintiff's physical and mental health, safety, academic progress, and/or professional responsibilities," and that WPI failed to perform its duty.  Compl. ¶¶281, 282, 284.

"'To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant [committed a breach of] this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.'"  *Nguyen*, 479 Mass. at 448 (*quoting Jupin v. Kask*, 447 Mass. 141, 146 (2006)).

"Courts have held that the basic legal relationship between students and universities is contractual in nature."  *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 93 (D. Mass. 1998) (*citing Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st Cir.1998)).  In certain, limited circumstances, the courts have recognized that a university owes certain, limited duties to its students.  *See, e.g.*, *Nguyen*, 479 Mass. at 453 (limited duty in certain circumstances to take reasonable measures to protect student from self-harm); *Mullins*, 389 Mass. at 52 (limited duty in certain circumstances to protect resident students against criminal acts of third parties); *Helfman v. Northeastern Univ.*, 485 Mass. 308, 321 (2020) (limited duty to take reasonable measures to protect students when university has actual knowledge that would lead to the conclusion that a student on campus is in imminent danger of serious physical harm due to alcohol intoxication and the student is incapable of seeking help for themselves).  The courts have carefully circumscribed the scenarios in which a

18

university can be found negligent for harms to students, but no court has held that a university has a duty to protect its students from uncivil behavior committed by a fellow student.

Ms. Wu reads too much into the "special relationship" that the Supreme Judicial Court recognized in *Nguyen*; such special relationship does not give rise to a duty on WPI's part to take the actions Ms. Wu faults WPI for not taking. 479 Mass. at 453. "[U]niversities are not responsible for monitoring and controlling all aspects of their students' lives. There is universal recognition that the age of <u>in loco parentis</u> has passed, and that the duty, if any is not one of a general duty of care to all students in all aspects of their collegiate life." *Nguyen*, 479 Mass. at 451 (internal quotation and citation omitted). "[G]raduate students are adults in all respects under the law. Universities recognize their students' adult status, their desire for independence, and their need to exercise their own judgment. Consequently the modern university-student relationship is respectful of student autonomy and privacy." *Id*. at 451 (citations omitted). In essence, Ms. Wu alleges that Ms. Ma, a fellow student, behaved in a manner that compromised or negatively affected Ms. Wu's mental health. Under the "special relationship," however, WPI had no duty to intervene in an interpersonal dispute between two adults.[12] Rather, the "special relationship" between WPI and Ms. Wu obligated WPI to take reasonable measures to protect Ms. Wu from self-harm. *Nguyen*, 479 Mass. at 453. As explained above, *see supra* section I.A., WPI took such reasonable measures to protect Ms. Wu from self-harm.

Any argument by Ms. Wu that WPI voluntarily assumed a duty to regulate interpersonal relationships between its adult students through the Student Code of Conduct, ignores the plain language of the Student Code of Conduct. The Student Code of Conduct, Compl., Ex. B, makes clear that if Ms. Wu wanted WPI to take any action with regard to the conduct of Defendant Ma,

---

[12] Nevertheless, Ms. Perlow did meet with Ms. Ma regarding her supposed conduct. Compl. ¶172.

she was to submit a complaint under the Student Code of Conduct and the complaint was to be addressed pursuant to the procedures set forth in the Student Code of Conduct. *See* Compl., Ex. B ("The Resolution and Appeals Process (RAP) provides a consistent, fair, and effective mechanism to resolve cases in which students … allegedly violate the standards of the WPI community … The RAP is also a mechanism to maintain a safe community, enforce WPI policy, and promote accountability."). Ms. Wu does not allege, nor can she, that she filed a complaint asserting that Ms. Ma had violated the Student Code of Conduct.

Pointing to the "special relationship," Ms. Wu asserts that WPI committed gross negligence when it "failed to take action to stop or prevent the acts of Defendant Ma." Compl. ¶¶289, 291. For the same reasons that the Court should dismiss Count V (negligence), the Court should dismiss Count VI. *See, e.g.*, *Parsons v. Ameri*, 97 Mass. App. Ct. 96, 106 (2020) ("[G]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence … It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care.").

### III.   THE COURT SHOULD DISMISS COUNT IX (IIED) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Ms. Wu asserts that "on or about November 11, 2021, WPI engaged in extreme and outrageous conduct with the intent to inflict emotional distress upon Plaintiff" because "after learning Plaintiff did not want to take a break from campus or withdrawing from the PhD program, WPI required Plaintiff to go to a hospital … all while taking steps to ensure Plaintiff would be admitted to a hospital under M.G.L. c. 123, section 12"[13] and "on or about November 16, 2021,

---

[13] Ms. Wu's allegations make clear that it was the staff at UMass Memorial, not anyone at WPI, that made the decision to admit Ms. Wu pursuant to M.G.L. c. 123, §12. Indeed, under M.G.L. c. 123, §12, only a physician, an advanced practice registered nurse, a qualified psychologist, a licensed independent clinical social worker, or a police officer, in certain circumstances, has standing to apply for the restraint and hospitalization of an individual if they believe it is necessary

WPI placed Plaintiff on Administrative Withdrawal, knowing that Plaintiff would not be allowed to remain in the United States due to the change in her immigration status[.]"  Compl. ¶¶311-313.

"In Massachusetts, to state such a claim [for IIED], a plaintiff must allege (1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it."  *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 617 (D. Mass. 2016) (*citing Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–145 (1976)).  "Conduct is 'extreme and outrageous' if it is 'beyond all possible bounds of decency and utterly intolerable in a civilized community[]' [] This is a high bar."  *Doherty v. Emerson Coll.*, No. 1:14-cv-13281-LTS, 2017 WL 4364406, at *11 (D. Mass. Sept. 29, 2017) (*quoting Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997)).  It is not enough even if "the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  *Emerson Coll.*, 2017 WL 4364407, at *11 (internal quotation marks and citation omitted).

Here, Ms. Wu's allegations demonstrate that WPI's conduct did not rise to the requisite extreme and outrageous level.  As explained above, WPI acted in response to Ms. Wu's conduct – namely her recent suicide attempt and hospitalization and her increasingly concerning communications – because WPI was concerned that Ms. Wu was suicidal.  It is neither outrageous nor extreme to require a student who has recently attempted to commit suicide and who is making increasingly concerning statements suggesting suicidal ideation, to go to the hospital to be

---

to prevent a likelihood of serious harm by reason of the individual's mental illness.  M.G.L. c. 123, §12.

evaluated by medical professionals.[14]  Moreover, it is neither extreme nor outrageous to require

such a student to take an administrative withdrawal so that she can focus on her mental health.

Lastly, assuming, *arguendo*, that WPI's conduct did rise to the requisite extreme and outrageous

level, Ms. Wu cannot demonstrate that WPI acted with the requisite bad intent.  Indeed, not only

did WPI not act with the requisite bad intent, WPI acted pursuant to its duty under Massachusetts

law to take reasonable measures to protect Ms. Wu from self-harm.  *Nguyen*, 479 Mass. at 453.

### IV.   THE COURT SHOULD DISMISS COUNTS X (BREACH OF CONTRACT), COUNT XI (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING), AND COUNT XII (PROMISSORY ESTOPPEL) FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Counts X, XI, and XII are premised on Ms. Wu's assertion that WPI's Student Code of

Conduct created a contract between WPI and Ms. Wu; Counts X, XI, and XII are all fundamentally

flawed and should be dismissed because the aspirational language of the Student Code of Conduct

was not definite enough to form a binding promise and WPI could not reasonably expect that Ms.

Wu would read such aspirational conduct as creating a binding promise.

Ms. Wu asserts that WPI breached the contract formed by the Student Code of Conduct by:

(1) "failing to provide a nurturing, supporting, collaborative, and positive learning environment

encouraging the active exchange of ideas, deep reflection, and sound decision making[,]" (2)

"failing to ensure Defendant Ma would comply with WPI's Student Code of Conduct[,]" and (3)

"taking steps to ensure Plaintiff would be admitted to a hospital under M.G.L. c. 123, section 12 in

order to place Plaintiff on administrative withdrawal from WPI.[15]

As explained above, "[c]ourts have held that the basic legal relationship between students

---

[14] Again, as explained above, *see supra* Section I.A., the medical professionals at UMass Memorial and McLean Hospital agreed with WPI's significant concerns.

[15] As explained above, *see supra* n. 14, staff at UMass Memorial, not anyone at WPI, determined that it was necessary to admit Ms. Wu pursuant to M.G.L. c. 123, §12

and universities is contractual in nature." *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 93 (D.

Mass. 1998) (*citing Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st Cir.1998)).  "The terms of the

contract may include statements provided in student manuals and registration materials." *Id*. at 94-

95 (*citing Mangla*, 134 F.3d at 83).  "'The proper standard for interpreting the contractual terms is

that of reasonable expectation—what meaning the party making the manifestation, the university,

should reasonably expect the other party to give it.'" *Id*. at 94 (*quoting Mangla*, 135 F.3d at 83).

"Vague and generalized representations are not contractually enforceable." *Brown*, 2021 WL

2785047, at *5 (*citing Cygan v. Megathlin*, 326 Mass. 732, 733-34 (1951)).

　　　With regard to (1), the language of the Student Code of Conduct that Ms. Wu quotes makes

clear that the statements are aspirational and not definite enough to form a binding promise.

Moreover, other language in the Code of Conduct confirms the aspirational nature of this language

"WPI is *committed* … WPI *expects* … Each WPI *student* is responsible for reading and

understanding *WPI's expectations*, which are documented in this Code."  Compl. ¶¶75, 76, 80

(emphases added).  In *Brown*, the court found that the following statements in Suffolk Law

School's disability services bulletin were too generalized, aspirational, and insufficiently definite to

form a contract: "the disability services 'serves as a valuable resource for students with disabilities

… to promote an understanding and awareness of accessibility issues … in order to provide a

supportive and engaging setting for our students.'" *Brown*, 2021 WL 2785047, at *6; *see also G. v.*

*Fay School*, 931 F.3d 1, 9 (1st Cir. 2019) (*citing Shin v. Mass. Inst. of Tech.*, No. 020403, 2005 WL

1869101, at *7 (Mass. Sup. Ct. June 27, 2005) (finding that a general statement of the school's core

values and aspirational diversity statements in a student handbook "are exactly the sort of

generalized, aspirational statements that are insufficiently indefinite to form a contract").  Given the

aspirational language of the Student Code of Conduct that Ms. Wu quotes and given the other

language in the Student Code of Conduct that confirms the aspirational nature of that language, it

was/is not reasonable for WPI to expect that students would understand the Student Code of Conduct to create a binding contract, under which WPI guarantees that students will behave in a certain way toward each other.

With regard to (2), the Student Code of Conduct makes clear that if a student believes another student is violating the Code of Conduct, the student can file a complaint and WPI will follow the process set forth in the Code of Conduct for addressing such complaints.  Ms. Wu does not allege that she followed the process provided in the Code of Conduct to address Ms. Ma's alleged conduct.  This Court is no substitute for that process.  As such, it was/is not reasonable for WPI to expect that Ms. Wu wanted, expected, or was relying on WPI to take action with regard to Ms. Ma's alleged conduct.

With regard to (3), Ms. Wu points to no language that indicates that WPI made a promise not to place Ms. Wu on administrative withdrawal; indeed, given WPI's obligations under Massachusetts law, WPI could not make any such promise.  Additionally, no one at WPI made the decision to hospitalize Ms. Wu pursuant to M.G.L. c. 123, §12.  Lastly, WPI placed Ms. Wu on administrative withdrawal pursuant to its duty under Massachusetts law based on Ms. Wu's conduct.

For the same reasons that the Court should dismiss Count X (breach of contract), the Court should dismiss Count XI.  *See, e.g.*, *Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281 (2007) (holding that a claim for breach of the implied covenant of good faith and fair dealing can lie only where there exists a binding contract); *Doe v. Western New England Univ.*, 228 F. Supp. 3d 154, 180-181 (D. Mass. 2017) (*quoting Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376 (2004)) ("'The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship[.]'").  As explained above, WPI did not make a promise to Ms. Wu based on the language Ms. Wu quotes from the Code of Conduct.

For the same reasons that the Court should dismiss Count X (breach of contract), the Court should dismiss Count XII. *See, e.g.*, *Western New England Univ.*, 228 F. Supp. 3d at 182 (internal quotation marks and citation omitted) ("To plead a promissory estoppel claim under Massachusetts law, [Plaintiff] must allege [*inter alia*] that: (1) [the University] made an unambiguous promise which it should have reasonably expected to induce action or forbearance of a definite and substantial character on the part of [Plaintiff][.]").  As explained above, WPI did not make a promise to Ms. Wu based on the language Ms. Wu quotes from the Student Code of Conduct and thus there was no unambiguous promise upon which Ms. Wu could have reasonably relied.

## V.     THE COURT SHOULD DISMISS COUNT XIII (UNJUST ENRICHMENT) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Ms. Wu asserts that WPI was unjustly enriched when it accepted Ms. Wu's tuition[16] but then failed to abide by its supposed promises in the Student Code of Conduct, including by "taking steps to ensure Plaintiff would be admitted to a hospital under M.G.L. c. 123, section 12 in order to place Plaintiff on administrative withdrawal from WPI."  Compl. ¶341.[17]  To state a claim for unjust enrichment under Massachusetts law, Ms. Wu must allege, "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."  *Tomasella v. Nestle U.S., Inc.*, 962 F.3d 60, 82 (1st Cir.

---

[16] Ms. Wu's counsel knows that Ms. Wu did not pay any tuition to WPI.  While proof of that elemental fact, which completely undermines Ms. Wu's unjust enrichment claim, is not in the record, WPI points to Ms. Wu's letter of admission which remits her tuition for up to ten credits for Fall 2021 and up to ten credits for Spring 2022.  Compl., Ex. A.  WPI also points out that Ms. Wu carefully does not allege how many credits she enrolled for the Fall 2021.  WPI will address this deficiency at the appropriate time.  Suffice it to say for present purposes that the Court should view with great skepticism any allegations that are not supported by direct proof.

[17] As explained above, *see supra* Section IV, the aspirational language quoted by Ms. Wu from the Student Code of Conduct did not establish a contract or any binding promises between WPI and Ms. Wu.  *See, e.g.*, *Brown*, 2021 WL 2785047, at *6.

2020) (internal quotations and citation omitted).  "Unjustness" is "a quality that turns on the reasonable expectations of the parties."  *Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (internal quotation marks and citation omitted).

Ms. Wu's claim for unjust enrichment is flawed in two respects.  First, as explained above, WPI did not make a contract or any binding promises through the aspirational language of the Student Code of Conduct that Ms. Wu quotes.  As a result, WPI did not accept Ms. Wu's tuition in exchange for those supposed promises and, thus, WPI did not have an appreciation or knowledge that it was accepting Ms. Wu's tuition in exchange for such supposed promises.  Second, Ms. Wu cannot demonstrate any unjustness.  As explained above, WPI, in response to Ms. Wu's suicide attempt and her increasingly concerning statements, took action pursuant to its duty under state law to protect Ms. Wu from self-harm.  As a result, Ms. Wu will not be able to establish that WPI's retention of any tuition paid by Ms. Wu for which she did not receive services as a result of the administrative withdrawal was inequitable.

## VI.   THE COURT SHOULD DISMISS COUNT XIV (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Ms. Wu alleges that WPI "interfered with an agreement between Plaintiff and the United States Government," *i.e.*, Ms. Wu's F-1 Visa, by "intentionally and/or maliciously interfer[ing] with Plaintiff's ability to maintain enrollment by involuntarily putting Plaintiff on administrative leave."  Compl. ¶¶346-348.  Under Massachusetts law, Ms. Wu must allege that (1) she had a contract with a third party; (2) WPI induced a breach of that contract knowingly; (3) WPI's interference was improper in motive or means; and (4) Ms. Wu was harmed thereby.  *See, e.g.*, *Bennett v. Saint-Gobain Corp.*, 453 F. Supp. 2d 314, 333 (D. Mass. 2006) (*citing Wright v. Shriners Hosp.*, 412 Mass. 469, 476 (1992)).

Setting aside the issue of whether a F-1 visa is in fact a contract, Ms. Wu will not be able to

demonstrate elements (2) or (3) because WPI acted pursuant to its obligations under Massachusetts and federal law.  As explained above, WPI decided to place Ms. Wu on administrative withdrawal pursuant to its duty to take reasonable measures to protect Ms. Wu from self-harm, given its knowledge of Ms. Wu's suicide attempt and Ms. Wu's increasingly concerning statements; thus, Ms. Wu cannot demonstrate an improper motive or means by WPI.  As evidence of WPI's lack of improper motive or means, Ms. Tseng and Ms. Perlow discussed alternatives with Ms. Wu that would have allowed her to maintain her visa: "[w]e discussed that there are various options for pursuing your degree here at WPI, including: the possibility of a medically approved reduced course load that allows you to focus on your health, take fewer courses, and can allow you to continue your TAship, which allows you to maintain your funding.  As Mirabelle explained, this is possible to do and maintain your visa."[18]  Compl. ¶174.  Ms. Wu rejected the proposed alternatives. Second, pursuant to federal regulation, WPI is obligated to "keep records containing certain specific information and documents relating to each F-1 or M-1 student to whom it has issued a Form I-20" and "Schools must update SEVIS [Student and Exchange Visitor Information System] with the current information within 21 days of a change in any of the information contained in paragraphs (f)(1) and (h)(3) of this section[;]" paragraph (f)(1) requires information about a F-1 visa student's period of enrollment.  8 C.F.R. 214.3(g)(1); 8 C.F.R. 214.3(g)(2)(i); 8 C.F.R. 214.3(g)(2)(ii).  Given the change in Ms. Wu's enrollment status, WPI was obligated to update the information in SEVIS and thus Ms. Wu cannot demonstrate that WPI knowingly induced a breach of any contract Ms. Wu might have had with the U.S. Government as a result of her F-1 Visa or that WPI did so with the requisite bad intent.

---

[18] *See, e.g.*, 8 C.F.R. 214.2(f)(6)(iii)(B) ("The [designated school official] may authorized a reduced course load (or, if necessary, no course load) due to a student's temporary illness or medical condition for a period of time not to exceed an aggregate of 12 months while the student is pursuing a course of study at a particular program level.").

**Conclusion**

For the above reasons, WPI respectfully requests that the Court dismiss the entirety of Ms.

Wu's Complaint as alleged against WPI.

Respectfully submitted,

WORCESTER POLYTECHNIC
INSTITUTE,

By its attorneys,

/s/ Alan D. Rose
Alan D. Rose (BBO #427280)
Meredith W. Doty (BBO #652220)
B. Aidan Flanagan (BBO #675667)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
(617) 536-0040 (Office)
(617) 536-4400 (Fax)
adr@rose-law.net
mwd@rose-law.net
Dated: August 8, 2022                          baf@rose-law.net


**CERTIFICATE OF SERVICE**

I, Alan D. Rose hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants on August 8, 2022.

/s/ Alan D. Rose
Alan D. Rose